UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **LEONA THIBODEAUX** | **:** | **DOCKET NO. 15-cv-1755** |
| **VERSUS** | **:** | **JUDGE MINALDI** |
| **TRUNKLINE GAS CO., LLC** | **:** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the court is a Motion to Remand [doc. 7] filed on June 11, 2015, by the plaintiff, Leona Thibodeaux (hereafter, "plaintiff") in response to a Notice of Removal [doc. 1] filed on May 26, 2015, by defendant, Trunkline Gas Co. LLC (hereafter, "defendant"). The defendant filed an opposition to the instant motion and the plaintiff filed a reply thereto. For the reasons stated below, the motion to remand is hereby **DENIED**.

### I.
#### FACTS & PROCEDURAL HISTORY

This matter concerns plaintiff's suit against defendant over payments the plaintiff claims she was owed under Southern Union's severance arrangement (hereafter, "arrangement").[1] Plaintiff was an employee of defendant until her position was terminated by the merger of defendant's parent company on May 4, 2012. Doc. 7, att. 2, p. 1. The severance arrangement creates an administrative committee with "sole discretionary authority and all powers necessary" to carry out the functions of the arrangement and process all claims as they arise. Doc. 15, att. 3, pp. at 6–7, 8–9. The arrangement, which first became effective in February 2005, applies to eligible

---

[1] Plaintiff uses the term "contract" and defendant uses the term "plan."

-1-

employees who were involuntarily terminated by the defendant, subject to exceptions including but not limited to:

- "circumstances for which the Administrative Committee makes a written determination that a severance benefit will not be paid," and
- terminations "for cause or misconduct . . . as such terms are construed by the Company in its sole discretion." *Id.* at 1–2.

Amount of payment is based upon years of service and base salary. *Id.* at 3. Upon a determination of eligibility, severance payments are to be made "in a single sum payment as soon as administratively feasible." *Id.*

The arrangement conditions receipt of benefits upon the employee's timely execution of a separation agreement, which includes a waiver and release of all claims against the employer arising from the employment and its termination. Doc. 15, att. 3, p. 3. Plaintiff did not sign the separation agreement at the time of the merger because she was pursuing other claims against the defendant but later offered to execute a waiver in exchange for her benefits under the arrangement in lieu of an appeal of these claims before the Fifth Circuit. Doc. 7, pp. 1–2; Doc. 15, p. 5; Doc. 15, att. 6, p. 1.

Upon defendant's rejection of the plaintiff's offer, plaintiff sued defendant in the 14th Judicial District Court in and for Calcasieu Parish, Louisiana, on May 1, 2015. Doc. 1, att. 3, p. 1. Plaintiff alleged that she was now owed severance benefits under the arrangement based on the qualifying terms of her separation and her willingness to sign a release of her claims against defendant. *Id.* at pp. 1–2. She further alleged that defendant's failure to provide the severance benefits under the arrangement was a breach of contract, making the claim a matter of state law. *Id.* at 1.

In return, defendant filed a timely notice of removal to this court on May 26, 2015. Doc. 1. Defendant asserts that this court has original and exclusive jurisdiction over the case because the

arrangement is not a contract, but instead an employee benefit plan governed by the Employee Retirement Income and Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, over which federal courts have exclusive jurisdiction. 29 U.S.C. § 1132(e)(1). Plaintiff moves to remand, reasserting that the arrangement was a contract and not a benefit plan governed by ERISA, thereby depriving this court of subject matter jurisdiction. Doc. 7, pp. 1–2. Plaintiff grounds this claim in the argument that the severance package is merely an employee benefit and not part of a benefit plan, because it calls for "the calculation and payment of a one-time lump severance amount" with "no ongoing administration or payment of benefits." Doc. 7, att. 1, p. 5. The defendant has responded, arguing that eligibility determinations and other administrative requirements sufficiently distinguished the arrangement from cases used by the plaintiff as precedent and asserting that these same features establish the plan as one that must be governed by federal law under ERISA. Doc. 15, pp. 4, 12–21. Plaintiff replied on July 9, 2015, strengthening the analogy between the present case and other ERISA jurisprudence on the basis that a formula used to calculate the amount of a severance payment does not necessitate the complexity or administrative scheme required to claim ERISA preemption. Doc. 16, pp. 1–2.

## II.
## LAW & ANALYSIS

The sole issue before this court is whether subject matter jurisdiction is established by the existence of a federal question, owing to the qualification of defendant's severance arrangement as an employee welfare benefits plan under ERISA. For the following reasons, we rule that the arrangement does invoke ERISA and that this court therefore has subject matter jurisdiction over the case.

### A. This court has federal question jurisdiction under ERISA because the plaintiff's claim relates to a qualifying employee benefit plan.

Any civil action brought in a State court of which the United States district courts have original jurisdiction may be removed to the proper district court. 28 U.S.C. § 1441(a) (2013). District courts have original jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "[A] cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). The removing party bears the burden of showing that removal was procedurally proper and that federal jurisdiction exists. *See De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995). "If the right to remove is doubtful, the case should be remanded." *Case v. ANPAC Louisiana Ins. Co.,* 466 F. Supp. 2d 781, 784 (E.D. La. 2006); *see also Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100 (1941) (removal is to be construed narrowly and in favor of remand to state court); *Perkins v. State of Miss.,* 455 F.2d 7 (5th Cir. 1972) (same).

In certain cases, however, a federal statute's "preemptive force" can be great enough to convert a claim brought under state law when Congress has acted with the requisite intent. *Kramer v. Smith Barney*, 80 F.3d 1080, 1082–83 (5th Cir. 1996), citing *Metropolitan Life Ins. Co.*, 481 U.S. at 63. Such is the situation when a state contract claim relates to an employee benefit plan covered by ERISA, which includes under 29 U.S.C. § 1002(1)(A) plans that provide "benefits in the event of . . . unemployment." *See, e.g.*, *Whittemore v. Schlumberger Technology Corp.*, 976 F.2d 922, 923 (5th Cir. 1992); *Epps v. NCNB Tex.*, 7 F.3d 44, 45 (5th Cir. 1994); *Wilson v. Kimberly-Clark Corp.*, 254 F. App'x 280, 282–84 (5th Cir. 2007) (all preempting state law claims against severance packages found to qualify as employee benefit plans under ERISA). Because the arrangement is an employee benefit plan under ERISA, as shown below, the plaintiff's state law claim on the arrangement is preempted and this court has federal question jurisdiction.

## B. The arrangement qualifies as an employee benefit plan under ERISA because the employer's discretion to determine eligibility necessitates an administrative scheme.

Not every severance package invokes ERISA. Plaintiff relies heavily on *Fort Halifax Packing Co. v. Coyne*, which involved the guarantee of a one-time payment to employees in the event that the defendant plant closed, the Court noted that ERISA was intended to apply only to benefit plans and not to all forms of employee benefits. 482 U.S. 1, 9 (1987). The Court distinguished a plan from other benefits programs by the presence of an administrative scheme, reflecting Congress's intent with ERISA of providing a uniform set of rules for governing their administration and protecting them from abuse. *Id.* at 15. Under the *Fort Halifax* precedent, the Fifth Circuit has held that other severance packages do not qualify as employee benefit plans under ERISA where there is no administrative scheme, commonly based on cases where the simplicity of eligibility determinations, benefits calculations, or dispensation of those benefits negates the need for administrative oversight or discretion.

Even though the *Fort Halifax* holding has commonly been extended to other cases involving severance packages crafted in contemplation of one-time events, the thrust of the analysis in many of the Fifth Circuit cases cited by plaintiff remains on whether there is a need for ongoing administrative review and discretion. *E.g.*, *Wells v. Gen. Motors Corp.*, 881 F.2d 166, 175–76 (5th Cir. 1989); *Tinoco v. Marine Chartering Co., Inc.*, 311 F.3d 617, 621–23 (5th Cir. 2002). For instance, in *Peace v. Am. Gen. Life Ins. Co.*, a Fifth Circuit case cited by plaintiff, the court held that an annuity purchased by the employer for the employee, where the eligibility was automatic upon the employee reaching a certain age and required no further exercise of discretion or administration, did not qualify as a benefit plan under ERISA. 462 F.3d 437, 440–41 (5th Cir. 2006). The time-limited nature of the *Fort Halifax* closing and its progeny remains relevant, however, when it constrains discretion to such an extent that little to no administrative review is required. In *Fontenot v. NL Industries, Inc.*, another case relied on by plaintiff and distinguished

by defendant, the court declined to apply ERISA to a "golden parachute" plan because, like the Fort Halifax plan, it dealt with a lump sum payment "triggered by a single event [and requiring] no administrative scheme to meet the employer's obligation." 953 F.2d 960, 962 (5th Cir. 1992).

As plaintiff observes, the level of administrative review under qualifying Fifth Circuit cases entails more than the one-time calculation of benefits, even if those benefits can be received in installment payments. *E.g.*, *Wells*, 881 F.2d at 175–76; *Peace*, 462 F.3d at 441. Instead, it is usually more a question of eligibility than of determining or dispensing the amount of severance. In our review of *Cantrell v. Briggs & Veselka Co.*, another case cited by plaintiff, we note that the Fifth Circuit found the need for an administrative scheme where the administrator must exercise its discretion to determine what kinds of separations qualify for severance benefits or whether the applicant has met other eligibility conditions. 728 F.3d 444, 451 (5th Cir. 2013), citing *Bogue v. Ampex Corp.*, 976 F.2d 1319, 1321 (9th Cir. 1992) (remarking that, unlike *Bogue*, the severance plan in *Cantrell* did not involve administrative discretion such as determining whether the applicant had received "substantially equivalent employment").

In *Clayton v. ConocoPhilips Co.*, cited by defendant, the Fifth Circuit recently held that there was sufficient need for administrative review where a severance arrangement gave the trustee eligibility discretion, including determining whether good reason had existed for the separation, and the two-year window for claims after the triggering event created a need for "an ongoing administrative program." 722 F.3d 279, 295–96 (5th Cir. 2013), citing *Crowell v. Shell Oil Co.*, 541 F.3d 295, 302–07 (5th Cir. 2008).

In *Wilson v. Kimberly-Clark Corp.*, cited by defendant, the severance package was held to qualify as a benefit plan under ERISA because it "set forth specific eligibility criteria that disqualified some participants," thus calling for administrative discretion even in light of some guidelines. 254 Fed. App'x at 283. Plaintiff also cites *Aguirre-Santos v. Pfizer Pharmaceutical*

*Co.*, where a severance package found not to qualify as an ERISA plan gave the administrator discretion to determine when an employee had been terminated for cause, but was "largely governed by specific criteria" and allowed for such determinations to be made efficiently, negating the need for ongoing review. 2013 WL 5724061 at *2 (D.P.R. Oct. 21, 2013). Though both *Aguirre-Santos* and *Wilson* differ from the preceding cases by the existence of more guidelines in determining eligibility, we distinguish the two based on *Aguirre-Santos*' emphasis on the lack of need for an ongoing administrative mechanism to make for-cause determinations. As the Fifth Circuit found in *Clayton*, when the plan administrator must make eligibility determinations as they arise, then there is as a matter of course a need for ongoing administrative review. 722 F.3d at 295–96.

It is not clear from the record whether the merger that resulted in plaintiff's involuntary separation might have been contemplated at the time the arrangement went into effect in 2005. In any event, the arrangement does not limit its scope to merger lay-offs and had, in fact, been in existence for over seven years when the plaintiff received notice of termination in 2012. Attempts by the plaintiff to analogize the arrangement to *Fort Halifax*, *Fontenot*, *Wells*, and other single-event severance package cases are misguided. We are more persuaded by defendant's analogies to ongoing severance packages of general applicability. Whittemore, 976 F.2d at 923 (5th Cir. 1992); *Wilson*, 254 F. App'x at 282. Even in cases tied to a one-time event, the Fifth Circuit has already found a two-year claims window to create sufficient need for an ongoing administrative scheme in *Clayton*, also cited by defendant. 722 F.3d at 295. Therefore, given the long duration and general applicability of defendant's severance arrangement, we are not persuaded by plaintiff's attempt to link it to the *Fort Halifax* line of reasoning by tying the plan to a single event.

Furthermore, it appears that the severance arrangement grants the company sufficient discretion in determining eligibility to necessitate an administrative plan and all attendant ERISA

requirements. As with *Bogue* and *Clayton*, the administrators here made case by case determinations on eligibility of plan recipients without the "specific criteria" afforded in *Aguirre-Santos*. The administrative committee had sole discretion to interpret the terms of eligibility, including dismissal for cause. The administrative committee also wielded considerable authority through the clause authorizing it to terminate employment with a concurrent written determination that a severance benefit would not be paid. This power is evidently the kind contemplated by Congress in enacting ERISA and distinguished by the Court in its holding in *Fort Halifax*, as it gives the employer or plan administrator considerable latitude in determining access to severance benefits on which an employee might rely.

Therefore, given the length of the plan's existence, the potential scope of separations it covered, and the amount of discretion it granted to its administrators, this court finds that under existing precedent, it qualifies as an employee welfare benefit plan under ERISA and federal question jurisdiction necessarily exists.

### III.
#### CONCLUSION

For the reasons stated above, the plaintiff's Motion to Remand [doc. 7] is hereby **DENIED**.

THUS DONE this 31st day of August, 2015.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE